UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

KIMBERLY WATSON,

                              Plaintiff,                     **MEMORANDUM & ORDER**
                                                                              17-CV-4150 (PKC) (LB)

          - against -

WILLIAMSBURG COLLEGIATE
CHARTER,

                              Defendant.

-------------------------------------------------------x

PAMELA K. CHEN, United States District Judge:

Plaintiff Kimberly Watson, appearing *pro se*, initiated this action in July 2017 alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17 against her former employer, Defendant Williamsburg Collegiate Charter School. Before the Court is Defendant's motion to dismiss. For the following reasons, Defendant's motion to dismiss is granted and this action is terminated.

## PROCEDURAL HISTORY

Plaintiff filed her initial complaint on July 11, 2017, utilizing the Court's form for employment discrimination actions. (Complaint ("Compl."), Dkt. 1.) By Order dated July 20, 2017, the Court denied Plaintiff's request to proceed *in forma pauperis*. On August 1, 2017, Plaintiff paid the filing fee to commence this action. (*See* Dkt. 4.) On November 14, 2017, the Court issued an order explaining that the complaint did not sufficiently allege her Title VII claim,

directing her to file an amended complaint. (Dkt. 7.) On January 10, 2018[1], Plaintiff filed an amended complaint (Amended Complaint ("Am. Compl."), Dkt. 8), claiming that Defendant violated Title VII by engaging in racial, national origin, and religious discrimination against her.[2] (Dkt. 8.) On February 13, 2018, Defendant filed a request for a pre-motion conference, seeking to file a motion to dismiss. (Dkt. 17.) The Court denied the request, finding a conference unnecessary, and instead construed Defendant's request as a motion to dismiss. (ECF Entry 2/22/18.) Plaintiff filed a response to the motion that was docketed on May 17, 2018 (Dkt. 31), and Defendant filed a reply on April 26, 2018 (Dkt. 28). Oral argument on the motion was held on June 12, 2018.

---

[1] Defendant argues that the Court should dismiss the complaint solely because Plaintiff was two days late in filing it. (Dkt. 17, at 1.) The Court declines to do so, given Plaintiff's *pro se* status.

[2] Plaintiff omits certain facts related to her Title VII claim in her amended complaint that were included in her original complaint. (*See* Dkts. 1, 8.) Although it is clearly established law that a plaintiff's amended complaint completely replaces the original complaint, *Arce v. Walker*, 139 F.3d 329, 332 n. 4 (2d Cir. 1998), in light of Plaintiff's *pro se* status, the Court will consider the amended complaint as supplementing, as opposed to replacing, Plaintiff's original factual allegations. Furthermore, as discussed *infra*, in her opposition to Defendant's motion to dismiss, Plaintiff asserts additional facts, as well as an additional basis, *i.e.*, national origin, for her discrimination and retaliation claims. Although a plaintiff is generally precluded from asserting additional facts and claims as part of motion practice, the Court will consider these new allegations because of Plaintiff's *pro se* status. References to the "complaint" in this decision encompasses the original (Dkt. 1) and amended (Dkt. 8) complaints, along with the new allegations in Plaintiff's opposition (Dkt. 31.)

# RELEVANT FACTS[3]

Plaintiff was employed by Defendant as a school social worker.[4] In January 2016, a survey was circulated to all staff to select their religious preferences. (Compl. at 5.)[5] Plaintiff selected "other" because she "was not given a baptism or any religious ceremony, but she does "believe in the Almighty Power." (*Id.* at 5, 8.) After submitting the survey, Plaintiff's interactions with Principal Alexandra Bronson and Director of Operations Natalya Shulga "shift[ed]." (*Id.* at 8.) Plaintiff felt "excluded" and "conversations would end abruptly when I came around." (*Id.*) Bronson also had school psychologist Yacob Danzinger reassigned because of his supportive relationship with Plaintiff. (Am. Compl. at 18.)

Plaintiff was moved from an office she shared with an African-American staff member to an office on the third floor of the school building, away from the main floors of the school. (*Id.* at 18-19.) Plaintiff was the only full-time staff member "asked to permanently move to a floor where no one else worked full-time." (*Id.* at 19.) She expressed reservations about the condition of the room, which was full of "broken glass, broken heavy metal industrial fans, dusty and with tons of broken furniture." (*Id.* at 20.) During this time, the school "denied" Plaintiff access to the children with whom Plaintiff had previously worked. (*Id.*) Plaintiff alleges that certain teachers and administrators, including Bronson and Shulga, did not have the "education skills" to deal with

---

[3] As it must, the Court accepts as true the facts as alleged by Plaintiff. *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013).

[4] Although Plaintiff does not indicate when she began working at the school, it appears that she worked there at least as of 2013, because she alleges that she received positive performance reviews for three years prior to April 2016.

[5] Record citations refer to the pagination generated by the court's CM/ECF docketing system and not the document's internal pagination.

children and "triggered students into crisis which escalated unsafe conditions in our school on almost a daily basis." (*Id.* at 21.)

Three weeks after submitting the religious preference survey, Bronson informed Plaintiff's social work case consultant that Bronson would be giving Plaintiff a negative performance review. (*Id*. at 19-20.) Shulga informed Plaintiff that Shulga's evaluation of Plaintiff did not have to follow the normal protocol used to evaluate other staff members. (*Id.* at 20.) Plaintiff subsequently received a negative performance evaluation, despite having received positive evaluations for the prior three years of her employment at the charter school. Plaintiff was notified that if she did not improve, she would be terminated. (Compl. at 13.) On April 22, 2016, Plaintiff was notified that she would be terminated as of the end of June 2016. (*Id.* at 14.)

On April 20, 2017, the Equal Employment Opportunity Commission ("EEOC") dismissed Plaintiff's EEOC case and issued her a right-to-sue letter. (*Id.* at 15.)

## **STANDARD OF REVIEW**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Twombly*, 550 U.S. at 556). The "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted).

"In addressing the sufficiency of a complaint, [the Court] accept[s] as true all factual allegations and draw[s] from them all reasonable inferences; but [the Court is] not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein*, 708 F.3d at 94. A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted).

## DISCUSSION

Plaintiff alleges that she faced the following discriminatory conduct between January 2016 and April of 2016: termination of her employment, unequal terms and conditions of her employment, retaliation, and unfair and illegal treatment of children with disabilities. (Am. Compl., at 4.) Plaintiff seeks $750,000 in "punitive money damages . . . based on humiliation and emotional distress, not having a fair process to termination as historically compared to other terminated employees," as well as "termination of the principal and director of operations." (*Id.* at 6.)

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. 2000e-2(a)(1). In the Title VII context, "at the initial stage of the litigation[,] . . . the plaintiff does not need substantial evidence of discriminatory intent," and need only "sustain a *minimal* burden of showing facts suggesting an inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis in original); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) ("[A] plaintiff must allege that the employer took adverse action against her at least in

part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."). Nevertheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations and internal quotation marks omitted).

> I. **Plaintiff Has Not Sufficiently Alleged Discrimination Based on Race, National Origin, or Religion in Violation of Title VII**

Plaintiff attempts to state a cause of action under Title VII for employment discrimination based upon race and religion. To state a cause of action under Title VII, a plaintiff must set forth facts demonstrating that (1) she is a member of a protected class; (2) she satisfactorily performed her job; (3) she was subjected to adverse employment action; and (4) such action occurred under circumstances giving rise to an inference of discrimination based on her membership in the protected class. *Belfi v. Prendergast*, 191 F.3d 129, 140 (2d Cir. 1999). With regard to the fourth prong, a plaintiff must allege that an adverse employment action was taken against her because of discriminatory animus on the part of her employer. *Id.* at 139.

Here, the facts Plaintiff has alleged are insufficient to show that Plaintiff was subjected to an adverse employment action because of her membership in a protected class. Plaintiff has provided only one allegation that she was discriminated against because of her race: "the only reason I was punish [sic] by them and bμllied/gang up on at time was because of who I am. Being an unbaptized black girl from Brooklyn, who will defend the rights of children everywhere." (Am. Compl. at 22.) This lone conclusory allegation is insufficient to support an inference of racial motivation with respect to the fourth element of her Title VII claim. *See Edwards v. New York*

*State Unified Court Sys.*, No. 12-CV-46 (WHP), 2012 WL 6101984, at *4 (S.D.N.Y. Nov. 20, 2012) (explaining that a plaintiff "must show that the adverse employment actions occurred 'because of a protected characteristic'" and that "[t]he plaintiff's claim must offer more than conclusory statements") (quoting *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007)). In short, there is nothing in Plaintiff's complaint indicating that Defendant took any action against Plaintiff because of her race, and, therefore, she does not assert any "nonconclusory factual matter sufficient to nudge [her] claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d at 254.

The same is true for Plaintiff's belatedly added allegation that one of her supervisors was motivated by national origin bias. In her opposition to the dismissal motion, Plaintiff alleges for the first time that, in March 2015, "Administrator (J.T. Leaird)" met with Plaintiff to "discuss concerns [Leaird] had about [Plaintiff's] professional growth" based on photos of Plaintiff dressed in "a yellow [West Indian] carnival costume" that the administrator had found on Plaintiff's Facebook page. (Dkt. 31, at 2.) During the meeting, Plaintiff allegedly expressed her discomfort with what she perceived as Leaird's national origin bias. (*Id*.) Even assuming that national origin bias could be inferred from Plaintiff's interactions with Leaird, there are no allegations in the complaint about any adverse employment action resulting from such bias. Indeed, Plaintiff herself states that Shulga followed up with Plaintiff regarding her concerns about national origin bias. (*Id.* at 3.)

Plaintiff similarly does not allege sufficient facts that she was subject to any specific adverse employment actions because of her religion. She does not state that she identifies with any religion and therefore fails to allege that she is part of a protected class. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("It is axiomatic that mistreatment at work … is

actionable under Title VII only when it occurs because of an employee's . . . protected characteristic.").

To the extent that Plaintiff's claim is that she was discriminated against because she did not belong to any organized or recognized religion, *e.g.*, she was an "unbaptized black girl from Brooklyn (Am. Compl. at 22), she does not provide any support for claim that any alleged "mistreatment" by Defendant was connected to her religious beliefs or lack thereof. Plaintiff does not, for instance, allege that Bronson (or any of the other Defendants) made any remarks that could be viewed as having discriminatory animus with regard to Plaintiff's affiliation or lack of affiliation with an organized religion. At most, Plaintiff suggests a temporal nexus between her completion of the religious preference survey—in which she indicated "other" for her religious preference[6]— and the alleged adverse actions taken against her, which is insufficient to sustain her claim under Title VII. *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) ("[W]ithout more . . . temporal proximity is insufficient to satisfy [Plaintiff's] burden to bring forward some evidence of pretext.").

Plaintiff further alleges that she was discriminated against for advocating for children with disabilities. Specifically, she claims that she was "verbally repr[i]manded for advocating for children with autism" and "siding with the children and not with the school." (Am. Compl. at 16-17.) She also states that she has "seen and stood up to the discrimination against children with disabilities." (*Id.* at 21.) These statements suggest workplace issues that do not appear to be connected to a protected status, such as race, national origin, or religion. Plaintiff's complaint

---

[6] Indeed, though alleging that being unbaptized resulted in discrimination against her, Plaintiff does not allege that she ever informed anyone at the school that she is unbaptized or that anyone at the school was aware of this fact.

neither contains any plausible allegations that Defendant took adverse action against her for a discriminatory reason, nor does it show that Defendant showed any animus toward Plaintiff. As a result, Plaintiff's claim fails to "set forth any factual circumstances from which a[n] [improper discriminatory] motivation . . . might be inferred." *Patane*, 508 F.3d at 112.

## II. Plaintiff Has Not Sufficiently Alleged Retaliation in Violation of Title VII

Plaintiff alleges that Defendant retaliated against her for her responses on the religious survey by moving her office to a different part of the school and later terminating her employment. (Compl. at 12-14.) In her opposition, she suggests for the first time that her termination was also in retaliation for her filing of an EEOC complaint. (Dkt. 31, at 5.)

To establish a prima facie retaliation claim under Title VII, a plaintiff must allege (1) participation in a protected activity, (2) the defendant's knowledge of the protected activity, (3) an adverse employment action, and (4) a causal connection between the protected activity and the adverse employment action. *See Littlejohn*, 795 F.3d at 316.

Here, Plaintiff does not allege a plausible claim of retaliation under Title VII. Plaintiff does not sufficiently allege that there was a causal connection between her survey response and her move to a different office and subsequent termination. Even under the most liberal interpretation of Plaintiff's allegations, she provides no facts that could connect or link any adverse action to a protected status. Without a causal connection, there is no evidence of retaliation in violation of Title VII. Plaintiff alleges no facts that "directly show discrimination" or that "indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87.

Plaintiff also does not sufficiently allege facts supporting a claim of retaliation based on her filing of an EEOC complaint. In her opposition, Plaintiff states that she filed her EEOC

9

complaint the week of March 14, 2016, that Defendant's "HR Manager" was informed of the complaint in early April 2016, and that Plaintiff was told by her supervisors on April 22, 2016 that, despite "mak[ing] the necessary progress they wanted to see, . . . it was not enough to maintain [her] employment." (Dkt. 31, at 5.) While a temporal nexus of two months or less between the employee's protected activity and the adverse employment action is generally sufficient to state a prima facie claim of retaliation, it is insufficient where the employer initiated disciplinary action prior to the employee's complaint. *See Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("[w]here timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise."). Here, Plaintiff states that, at a meeting with Bronson and Shulga, on March 7, 2016 to discuss her annual evaluation, it was uncertain whether her contract would be renewed and that she "had one month to make the necessary changes in order to maintain [her] employment." (Dkt. 31, at 4-5.) The fact that Defendant had initiated the disciplinary process leading to Plaintiff's termination prior to her filing of an EEOC claim undermines the inference of causation needed to establish a prima facie claim of retaliation. *See Chang v. Safe Horizons*, 254 Fed. App'x 838, 839 (2d Cir. 2007) (summary order) (finding plaintiff failed to establish a prima facie case of retaliation where she was issued warnings consistent with her employer's progressive discipline policy before termination).

Accordingly, Plaintiff's complaint fails to allege sufficient facts from which to infer that she was subjected to any adverse employment action in retaliation for protected activity in which she engaged. Plaintiff has failed to state a plausible claim of employment discrimination based on religion, race, or national origin. *Iqbal*, 556 U.S. at 678 (2009) ("a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Twombly*, 550 U.S. at 570).  As a result, Defendant's motion to dismiss is granted.

## **CONCLUSION**

For the reasons stated herein, Defendant's motion to dismiss is granted, pursuant to Rule 12(b)(6).  All claims against Defendant are dismissed.

SO ORDERED:

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: Brooklyn, New York
　　　　July 3, 2018